May it please the Court, my name is Jonathan Montag and I represent Mr. Kaganovich and I have asked to reserve two minutes of time for rebuttal. This case starts off as a simple case about a smuggler and turns into a complex case in dealing with issues of jurisdiction, the smuggling, and also issues about asylum. The Court asked for additional briefing on jurisdiction, and so I'll briefly address that first. Well, I have an additional question beyond the ones that we asked you, and that is, your initial brief really talked about asylee status rather than refugee status. Is that a failure to raise the issue to this Court that will affect our ability to,  Well, I think that the issue is properly raised, but the arguments applied chiefly to Section 1158 rather than 1157. But I don't think that the fact that some of the statutes and regulations that I referred to related more specifically to asylum than to refugee status means that I didn't raise the issue. I just argued it poorly in the opening brief. I think there is authority in the circuit that says the issue is properly raised. That's enough, even if the arguments aren't fully or properly developed. And so therefore, I think that that issue isn't going to preclude determination by this Court. Also, the other argument that we make is that there's a subject matter jurisdiction issue. So at any time, this Court can find that there is no subject matter jurisdiction and then inform the lower administrative courts as well that they lack a subject matter jurisdiction. Just to develop that a little bit more, in the supplemental briefing you provided us, you argued that because Mr. Kaganovich was a refugee, he couldn't be removed until the refugee status was terminated. And you suggested in your brief that this was a jurisdictional issue and so that you didn't need to raise that argument before the BIA. If it was not a jurisdictional issue, would you say you had raised this argument to the BIA? No. I would say that I made some argument in the first case that because we said that he was a refugee, that fact is in the mix. But I wouldn't be so bold as to continue to assert that. The Notice of Appeal to the BIA at BR 31, paragraph 9, does say the immigration judge erred in disregarding that Mr. Kaganovich entered the United States as a refugee. So I don't understand why you're conceding that you didn't raise it below. Yeah. Well, in the opening brief, I do mention it as well. And it's not very prudent to raise something so substantial. And I did address it in the opening brief. And the issue to the BIA about his being a refugee status is something that I think that the record will just have to speak on. And I need to look at it more closely to see exactly what I put in that paper. But I shouldn't be so quick as to raise something. Well, you didn't argue it in the brief, but it appeared to me that you had included it in the Notice of Appeal. Yes, I did. And it is true that I didn't develop it to the BIA at all. And to this court, I developed it using the asylum rules. The important thing, I think, about the asylum rules is that it shows that Congress has methods if it wants to show how to strip a refugee or asylee of his asylum status. And what I cited in the opening brief shows that an asylee, if there's misconduct, can lose his asylum status other than as for a refugee, only if he's not a refugee when they grant it to him. Counsel, here's my dilemma with it. It seems to me that both the BIA and the Third Circuit have held that it doesn't matter if a person retains their refugee status. They actually assume that the person does retain their refugee status, even though they become an LPR. But that that doesn't prevent them from being removed, because any alien can be removed. And I think the wrinkle in your case, your client's situation, is that the question whether in the removal proceeding, the government has to do something to prove that the initial grant of refugee status was wrong, that he isn't still in that status. In other words, he came here as a refugee, which implies a fact finding that he met those requirements. The government has already found at some point in the past that he met those requirements. And that's the thing that I find the most baffling of how to deal with that. Now, as I understand it, the BIA has never decided that question. Well, the Third Circuit, when it considered the case, said that a refugee couldn't be removed, or at least said that the immigration held in that case. I don't know if there's ever been a case or a determination that whether a refugee can be removed because of misconduct, criminal misconduct or immigration misconduct. But they did say that once he becomes a permanent resident, that then he ceases to be a refugee. I don't read it the same way, I think. But I understand your interpretation of it. In summarizing what the immigration judge said, he said that the immigration judge said, this is in the Third Circuit case, that if the person had not become a permanent resident, he would not be subject to removal. And no one seems to challenge that.  Therefore, if a refugee, after his one year in refugee status, refuses to file for adjustment, or forgets to file for adjustment of status, does that mean he continues on as a refugee forever, or not? And it's surprising that the Third Circuit doesn't really address the issue of whether a person who doesn't become a permanent resident remains a refugee and therefore is immune from removal, while someone who becomes a permanent resident somehow loses it. That's not the case in this case. No, for us, he becomes a permanent resident, so the real issue is whether becoming a permanent resident then strips him of his refugee status. And if the refugee status was intended by Congress and by international law to give people who face persecution abroad protection in the third place, in this case the United States, a place where they can be safe forever, then to then be able to put them in removal proceedings takes away that protection. They certainly weren't going to make them citizens when they came here, but I think that the intention of international law in Congress was to make this a true safe haven, not subject to reexamination over and over again if they've done something wrong. Let me ask just one question, another question about the Notice of Appeal. In that notice, it's in addition to saying that the immigration judge erred in disregarding that Mr. Kaganovich entered the United States as a refugee, it indicated that the Congress has recognized the predicament of Jews in the former Soviet Union by passing the Lautenberg Amendment. Was Mr. Kaganovich admitted as refugee under the Lautenberg Amendment? Do you know the answer to that? I don't know. I don't know. Good morning, John Williams on behalf of the government. Do you know the answer to Judge Acuda's question, the nature of the original admission as a refugee, whether it was under the Lautenberg Amendment or under ordinary refugee procedures? I do not. I know that the record shows that he came in under his, that his mother had applied. It's my understanding that it was the General Refugee Act, but I'm not sure. Here's my central question about this case. With respect to the original entry way back when as a refugee, that entry as a refugee represents a decision by the government at that time that he met the definition of a refugee. And I certainly understand the argument that notwithstanding that he's a refugee, he's removable because any alien is removable. And I understand, you know, the argument that anything he's done since then might make him removable. But I don't understand how the government can now decide without carrying some special burden to prove that he didn't originally meet the definition of refugee, in other words, to go behind that. And here the agency said, well, we don't believe that he ever suffered way back when. I don't understand how they can do that. Well, first of all, when he came as a refugee, his allegations was that he came as a refugee per his mother. But more importantly, he testified that he became a lawful permanent resident. And indeed, he's required by law. Under section, INA section 209, you have within one year to either adjust or be placed in removal proceedings. Right. But I understand the BIA's decision in Somerco, or however that's pronounced, to suggest that a person retains refugee status, or at least that it isn't necessarily terminated by becoming an LPR. It doesn't undo the fact that you were admitted as a refugee. It doesn't turn out to matter because you could still be removed. But I guess the question I have is whether the government is somehow a stop to question the original basis for entry. Well, I would say the answer is no, the government's not a stop, and the government would respectfully disagree with your honors to the reading of Somerco. And that Somerco reads that within one year, as a refugee, if you're admitted as a refugee, and it would be under section 207 of the INA, that you have one year to adjust to lawful permanent resident. Once you adjust, you cannot carry two statuses. You can't be a refugee and also be a lawful permanent resident. It doesn't change the fact that you entered as a refugee and that the government at the time accepted that. No, it doesn't change that fact. But what it does do is it places the burden. Is that your interpretation of Somerco? Yes. That's what Somerco says. I think it's pretty hard to interpret it that way. And in Somerco, they went on and found that Somerco had adjusted to a lawful permanent resident. I thought they found he still had refugee status, but he could still be removed from the United States. They said it was irrelevant whether he was a refugee or not. May I just ask you, is there any statutory or regulatory authority that would provide that someone admitted into this country as a refugee would automatically qualify for asylum status? So once you've been admitted as a refugee, then the eligibility component, which says you have to show you're a refugee, is automatically satisfied. Is there any statute that provides that? No. In fact, when you are outside of the United States and you're applying for refugee status, you have to apply under Section 207 of the INA. Once you're present in the United States, you then have to reapply under Section 208 of the INA to attain refugee status, that is, make an application for asylum. And that's where the confusion here goes. Well, let me ask a further question. I thought the standard was the same. I may be wrong about this, so I really would appreciate your help. I thought that the only difference between initial attainment of refugee status and initial attainment of asylum status was the person's location when they made application. That is, a person who is outside the United States applies for refugee status, but still has to meet the definition of refugee that's in the statute. A person inside the United States applies for asylum and has to meet the same statutory definition of refugee. Am I missing something, or what have I got wrong? The standard is the same, but one who has been admitted then has to reapply and present the evidence all over, or they adjust. And in this instance, this petitioner adjusted to lawful permanent resident status. But here's, let me just be sure that I understand your answer, the first part of your answer. If Mr. Kaganovich and his mother had come to the United States before they had filed any papers, they would have applied for, or the mother would have applied for asylum instead of refugee status. But the thing that she had to demonstrate was the exact same thing that she demonstrated from outside the United States, is that right? That, I'm not sure if that's what she demonstrated. I'm not sure. I'm asking about what the law provides, so maybe it was bad to use Mrs. Kaganovich as the example. And that is part of the issue here, Your Honor, is that the mother. You're leaving my question. My question is, the person in either case has to prove that they meet the statutory definition of refugee. They just get a different tag or name on the status depending on where they were at the time they applied. Is that right? I would say that's correct. But once they've met the requirements under Section 207 and they come into the United States, they have one year within which to then adjust their status or they're placed in removal proceedings. It doesn't make a difference whether they met that standard when they were initially admitted or not. Exactly. It doesn't make any difference. And they have to start all anew and they have to then present whatever evidence they have. Has the BIA ever decided that question, whether the factual predicate for the establishment of refugee status initially is one that the government can ignore later on or whether it is bound by the facts that underlay the original refugee status? Has the BIA ever decided that question? I don't have a case in front of me for the Court, Your Honor, so I can't say yes or no. But the statute is clear between Section 207, 208, and 209. And those three sections should be read together because it's Section 209 that, in fact, requires that a person who's entered under 207 has to make applications within that one year. And I just don't have any cases before me, but I'm pretty sure that the Board has decided that point. And it is legislative history. The government, as the government placed in its supplemental brief and went to great pains to place in Senator Kennedy's history on this instance, stating that reading 209, a refugee who has been admitted needs to make an application within the one year to adjust status for their place in removal proceedings. And then you move over to they can apply under 208 for asylum or they can make other applications for adjustment of status. Yeah. And my only question is when they've applied for asylum, what effect, if any, does the original federal statute have on that? What effect does factual determination in their favor have in the proceeding? And the government's answer would be no effect. Okay. But the BIA has never decided that question. I don't know. I don't know whether they have or not. However, I believe that in SMRCO, at least they outline the fact that that's what needs to take place. I understand what John is saying, that that wasn't necessarily specifically the case there. But I believe that in SMRCO, they outline that issue. And I see my time is just about up. You may summarize briefly. Thank you, Your Honor. Presumably the legislative history indicates that there was a house wasn't going to create the status of refugee at all. And the Senate was going to do so, but you had to convert in two years. Is that right? Well, and initially that was one side was two years. And so they agreed in making it a one year. Exactly. There was a House bill and a Senate bill. And then Senator Kennedy married the two together and came up with a medium of one year that all refugees must adjust with one year of their place in removal proceedings. Well, Mr. Montauk, you said something about international law. Well, of course, refugees are a well-recognized concept of international law, isn't it? I'm sorry, Your Honor. I say the concept of refugee is well-recognized in international law, isn't it? Yes, it is. That seemed to me to present a problem. If you could remove refugees under the interpretation of the SMERCO decision, what was the consequence of that in international law? Well, I will note to the Court that SMERCO is back before the Third Circuit and it's pending actually right now. And I'll just summarize by saying that it's the government's contention that the SMERCO bill is a good bill. The petitioner did not exhaust both before waiving their argument in front of the immigration judge because they didn't apply to terminate, first of all, as a refugee. Counsel, this is supposed to be a short summary and you're well over your time. I would just say that here the petitioner failed to exhaust both before the immigration judge as well as the board and moved to dismiss that that issue should be dismissed for lack of jurisdiction from the brief. As to the other issues, the asylum, that the credibility issue is supported by substantial evidence. There is not compelling evidence to, the petitioner has not presented compelling evidence to overturn that credibility issue. And therefore, I would ask that the Court deny the petition for review as to the other relief that is sought. Thank you, Counsel. You have a little bit of rebuttal time remaining, Mr. Montague. Thank you, Your Honor. Firstly, Mr. Kaganovich came to the United States at 24 years old, so he was too old to be a derivative of his mother after the age of 21. So it was his own independent refugee claim that he won and came to the United States. The 8 U.S. Code states what a refugee is and the asylum definition refers to somebody who meets the definition at that 1101A42. So therefore, it is the same standard they have to reach. Most often, when a person comes to immigration court, there's changed circumstances. It's 15, 20 years later, a Vietnamese refugee comes 20 years later and can't make the same claim that he did when he came to the United States. So in as much as there's no changed circumstance, I would think that res judicata would apply, or should apply, and if he met it then, he meets it now. And for the last 10 seconds, I just wanted to point out that in the smuggling case, there was no statement from this smuggler, Mr. Marfoot, to substantiate anything about his being aided, assisted, or helped in the smuggling case. By Mr. Kaganovich, I don't think, without any other additional evidence, this Court could find that he actually is a smuggler.
judges: Cudahy , Graber, Ikuta